IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

**JOSHUA M.** [1]

Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

Defendant.

Civ. No. 6:25-cv-00162-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Joshua M. challenges the Commissioner's final decision denying his supplemental security income application arguing that the Administrative Law Judge (ALJ) erred by (1) improperly analyzing the medical opinions of Danielle Guthrie, D.O, and Lindsey King, Psy.D, and (2) finding Plaintiff's impairments did not meet listing 12.05B. (Pl.'s Br. at 2-8, ECF 13.) The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence. *Kitchen v.*

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

*Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020)). With that standard of review applied, the Commissioner's decision is AFFIRMED.

**(1) *Danielle Guthrie, D.O.*** The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2). "[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

On January 22nd, 2022, Dr. Guthrie completed a complex psychological assessment of Plaintiff. Tr. 561-67. Dr. Guthrie evaluated Plaintiff based on clinical review, mental status exams, and records provided by the department of disability determination services. Tr. 561. Dr. Guthrie noted Plaintiff arrived independently and on time to the appointment. *Id.* She noted he reported he could not focus at work, had a hard time understanding tasks, and would "get[] overloaded and freak[] out" if he got too much work. *Id.* Plaintiff reported to Dr. Guthrie that "he mainly cannot work because, 'it would be dangerous because sometimes I can snap on people without even realizing it. I would snap on a boss and get fired the next day.' " Tr. 561. Dr. Guthrie reported Plaintiff stated he "never had issues with bosses or coworkers" but did not get along with "most others, because of 'their energy.' " Tr. 563. Dr. Guthrie noted Plaintiff received special education in his youth and "has done some college." Tr. 563. She further noted Plaintiff

lived with his mom in an apartment, was engaged, his fiancé was going to move in with him, and she had partial custody of four children. *Id.*

Dr. Guthrie wrote that Plaintiff stated he played games, wrote, built Legos, took out the trash, walked, biked, skateboarded, and took the bus. Tr. 564. She noted he did light housework but was limited due to pain and did dishes "as tolerated due to pain." Tr. 564. She wrote Plaintiff rarely cooked but could make fast and easy meals. *Id.* Plaintiff reported to Dr. Guthrie he rapped sometimes and played video games daily as his hobbies. *Id.* Dr. Guthrie opined Plaintiff was independent with his activities of daily living ("ADL") and personal care. *Id.*

Dr. Guthrie opined Plaintiff appeared to be suffering "from the symptoms of a mild intellectual disability" and diagnosed Plaintiff with posttraumatic stress disorder, persistent depressive disorder, mild intellectual disability, probable multiple learning disorders, and possible attention deficit hyper-activity disorder. Tr. 565. She also opined Plaintiff had a mild impairment to his ability to tolerate the stress and pressures of day-to-day work activities and moderate impairments to his ability to understand, retain, and follow instructions and relate to others, including fellow works and his supervisor. Tr. 565-66. Dr. Guthrie opined Plaintiff had a marked impairment in his ability to sustain attention to perform simple, repetitive tasks. Tr. 566.

The ALJ found Dr. Guthrie's opinion unsupported and inconsistent with the record. Tr. 27. Regarding supportability, the ALJ identified several inconsistencies between evidence in Dr. Guthrie's report and the limitations she opined. *Id.* The ALJ noted how despite Dr. Guthrie's opinion Plaintiff could not manage his own funds, he reported to her that he could use a bank account, could manage his own money, and would collect bottles and cans to pay for tobacco and cannabis. *Id.* The ALJ also found Dr. Guthrie's opinion unsupported because it "[did] not appear Dr. Guthrie considered the claimant's ability to maintain a four-year relationship with his fiancée

and her four children, or his report that he has never had issues getting along with bosses or coworkers" when opining Plaintiff had a moderate impairment in relating to others. Tr. 27. The ALJ further explained Dr. Guthrie's limitations were not supported by Plaintiff's statements during the examination that he could navigate and travel via bus, use a computer, and was independent in his personal care and activities of daily living. *Id.* Lastly, the ALJ found Dr. Guthrie's medical opinion unsupported because Plaintiff "presented appropriately groomed, pleasant, and cooperative, and was observed as maintaining direct eye contact during most of the exam, and engaged during the evaluation." Tr. 27.

Regarding consistency, the ALJ found "the extent of limitations assessed [we]re not consistent with the claimant's actual functioning." Tr. 27. The ALJ noted Dr. Guthrie's opined limitations were inconsistent with previous medical examinations of Plaintiff in which Plaintiff was not observed to exhibit limited social skills or have difficulty providing direct responses to questions. Tr. 27, 478-85, 596-99. The ALJ found Dr. Guthrie's limitations inconsistent with medical records that noted Plaintiff stated he played video games on the computer and had good knowledge of how to use computer applications. Tr. 27. The ALJ reasoned Dr. Guthrie's limitation Plaintiff was "unable to perform simple, repetitive tasks required to maintain sustained employment" was inconsistent with Plaintiff's cooperative, engaged, and alert behavior as well as his logical and goal-directed thinking during a subsequent psychological examination. Tr. 27, 566. Because the ALJ applied the proper legal standards and supported their decision with substantial evidence, the ALJ did not err in finding Dr. Guthrie's limitations partially persuasive. *See Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." (citing *Orn v. Astrue*, 495 F.3d at 625, 630 (9th Cir. 2007).

**(2)** ***Lindsey King, Psy.D.*** On April 8, 2023, Dr. King conducted a mental status examination of Plaintiff. Tr. 602-08. Dr. King assessed Plaintiff based on a mental status exam, clinical interview and observations, and a review of Plaintiff's medical records as provided by the Oregon Department of Disability Determination. Tr. 602. Dr. King diagnosed Plaintiff with posttraumatic stress disorder, major depressive disorder (recurrent and moderate), mild intellectual disability (by history), and attention deficit hyperactivity disorder. Tr. 607. Dr. King opined Plaintiff had moderate limitations in his ability to interact with others and to concentrate, persist, or maintain pace. *Id.* Dr. King also opined Plaintiff had marked limitations in his ability to understand, remember, or apply information and to adapting or managing himself. *Id.* The ALJ found Dr. King's opinions regarding Plaintiff's marked limitations not persuasive because they were inconsistent with the record and unsupported by Dr. King's examination of Plaintiff. Tr. 28.

Regarding supportability, the ALJ found Dr. King's opinion that Plaintiff would sometimes "be in too much pain to engage in ADL's" unsupported because Dr. King was not qualified to assess Plaintiff's physical medical conditions and "she did not physically exam the claimant." Tr. 28, 607. Furthermore, the ALJ found that opinion unsupported because the two consultative medical examination reports Dr. King reviewed assessed Plaintiff as having minimal physical functional limitations, and Plaintiff presented with largely normal findings in those examinations. Tr. 28. Lastly, the ALJ found Dr. King's marked limitation of Plaintiff's ability to adapt and manage himself was unsupported because Plaintiff denied needing special accommodations when working, was cooperative and engaged during the examination, and reported he was able to independently watch a friend's dog. Tr. 28. The ALJ also noted Dr. King did not identify what clinical signs supported that level of impairment. *Id.*

Regarding consistency, the ALJ found Dr. King's limitations inconsistent with the record and Plaintiff's self-described abilities. *Id.* For example, the ALJ found Dr. King's opinion that Plaintiff would sometimes be in too much pain to engage in ADLs was inconsistent with Plaintiff's previous reports in other consultative examinations that he was independent with activities of daily living including personal care, performing chores, traveling via public transportation, interacting with family and friends, and engaging in hobbies. *Id.* The ALJ did not err in finding Dr. King's opinion partially persuasive because the ALJ reasonably analyzed the consistency and supportability of Dr. King's opinion and supported their analysis with substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999).

**(3)** ***Step Three Listing.*** Plaintiff argues the ALJ erred by finding he did not meet listing 12.05B at step three of the disability process. Pl.'s Br. at 2-5. Here, Plaintiff's argument the ALJ erred by finding he did not meet listing 12.05B is specifically tied to the ALJ's discounting of Drs. Guthrie and King's medical opinions. *Id.* Thus, Plaintiff has not articulated an independent error here; his success rises and falls on the success of his other assignments of error, already addressed above.

This court cannot "engage in second-guessing" of how the ALJ evaluated Plaintiff's limitations; this court must only ask whether substantial evidence supports the ALJ's ultimate conclusions. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Because such evidence is found in the record, this court affirms the ALJ's decision and the Commissioner's decision in turn.

**ORDER**

The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). As discussed above, the ALJ provided valid reasons for discounting the medical opinions provided by Dr. Guthrie and Dr. King and did not err in finding Plaintiff did not meet the 12.5B listing.

**ORDER**

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

It is so ORDERED and DATED this 18 day of August, 2026.

MARK D. CLARKE
United States Magistrate Judge